ATTEST:
A TRUE COPY CERTIFIED
Scott L. Poff, Clerk
United States District Court

By crobinson at 2:21 pm, Mar 03, 2020

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### WAYCROSS DIVISION

ALISHA MARCEIA NOLAN,

        Plaintiff,

    v.

ANDREW SAUL, Commissioner of Social Security,

        Defendant.

CIVIL ACTION NO.: 5:18-cv-89

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Anne Pate ("the ALJ" or "ALJ Pate") denying her claim for a Period of Disability and Disability Insurance Benefits. Plaintiff urges the Court to overturn the ALJ's decision and find Plaintiff disabled. Doc. 16 at 5; Doc. 20 at 4. Defendant asserts the Commissioner's decision should be affirmed. Doc. 19 at 16. For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

## BACKGROUND

Plaintiff filed an application for a Period of Disability and Disability Insurance Benefits on April 17, 2015, alleging she became disabled on September 19, 2010, due to back problems, her right leg giving out, post-traumatic stress disorder ("PTSD"), low IQ, back injury, depression, extensive nerve damage, and poor vision made worse by nerve medication. Doc. 12-3 at 2 (R. 61). After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. Doc. 12-4 at 21 (R. 118). On January 31, 2018, ALJ Pate

conducted a hearing at which Plaintiff, who was represented by counsel, appeared and testified. Doc. 12-2 at 17 (R. 16).  Carol Bennett, a vocational expert ("VE"), also appeared at the hearing. Id.  ALJ Pate found that Plaintiff was not disabled within the meaning of the Social Security Act since April 17, 2015.  Id.  The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review.  Id. at 2 (R. 1).

Plaintiff, born on May 22, 1989, was 28 years old when ALJ Pate issued her final decision and 25 years old on her alleged disability onset date.  Id. at 26 (R. 25).  She has at least a high school education and no past relevant work.  Id.

## DISCUSSION

### I.      The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).  Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability.  20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity." Id. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Id. at 140–41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and is acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform her past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite [her] impairments." Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to make adjustments to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff did not engage in substantial gainful activity since April 17, 2015, her alleged disability onset date. Doc. 12-2 at 19 (R. 18). At step two, ALJ Pate determined Plaintiff had degenerative disc disease and obesity, conditions which are considered "severe" under the Regulations. Id. The ALJ also acknowledged evidence supporting Plaintiff's other impairments, including loss of visual acuity, anxiety disorder, affective disorder, and learning disorder, but concluded these conditions were non-severe impairments. Id. at 21 (R. 20). At the third step, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Id. at 22 (R. 21). The ALJ found Plaintiff had the residual functional capacity to perform work at the light exertional level, with the following exceptions: avoid concentrated exposure to hazards; inability to more than occasionally stoop or climb ladders, ropes, or scaffolds; and inability to more than frequently climb ramps and stairs, balance, kneel, crawl, or crouch; moreover, Plaintiff could lift and/or carry 20 pounds occasionally; lift and/or carry 10 pounds frequently; stand and/or walk, in combination, for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; and push or pull commensurate with these lifting restrictions. Id. At the next step, the ALJ determined Plaintiff had no past relevant work. Id. at 25 (R. 24). The ALJ concluded at the fifth and final step that, considering Plaintiff's age, education, and residual functional capacity, Plaintiff could perform jobs existing in significant numbers in the national economy, including the jobs of manicurist, a semi-skilled, sedentary job; document preparer, an unskilled, sedentary job; and cashier, an unskilled, light exertion level job, all of which exist in significant numbers in the national economy. Doc. 12-2 at 27 (R. 26). Thus, ALJ Pate found Plaintiff was not disabled through the date of her decision. Id.

## II.    Issues Presented

Plaintiff contends the ALJ's decision denying her disability benefits is not supported by substantial evidence and is contrary to law.[1]  Doc. 16 at 1, 2; Doc. 20 at 1.  Additionally, Plaintiff asserts the Appeals Council, in denying her request for review, failed to consider new evidence.  Doc. 16 at 4.

## III.    Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence.  Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved.  The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007).  The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence.  Dyer, 395 F.3d at 1210.  In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards.

---

[1]    Plaintiff, who is proceeding pro se, did not characterize the ALJ's alleged error in this precise manner.  Rather, Plaintiff put forth numerous arguments opposing the ALJ's decision, which the Court addresses below in detail.  Defendant characterizes the issue presented in this way and the Court, for brevity's sake, construes Plaintiff's objection to the ALJ's findings in a similar, broad manner, as Plaintiff clearly takes issue with ALJ Pate's overall finding of non-disability.

Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *superseded by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

## IV. Whether Substantial Evidence Supports the ALJ's Finding of Non-Disability

Plaintiff asserts ALJ Pate did not properly consider the combination of her physical and mental impairments and her obesity and the medical evidence and her subjective symptoms show the severity of her spinal injury and related pain. Doc. 16 at 2–3; Doc. 20 at 2. Plaintiff also argues the ALJ erred in formulating her residual functional capacity, which limits how often she should stoop, balance, kneel, crawl, crouch, and climb ladders, ropes, scaffolds, ramps, or stairs, because Plaintiff never took a physical function test assessing her capacity to perform those actions. Doc. 16 at 1. Additionally, Plaintiff asserts the ALJ erred by considering a page from the record of another claimant, id. at 4, although the ALJ instructed that the page be removed from the record, doc. 12-2 at 37 (R. 36). Furthermore, Plaintiff argues two errors regarding the VE's answers to hypothetical questions. First, Plaintiff contends the VE failed to consider

Plaintiff's mental impairments and obesity, doc. 20 at 2, and second, Plaintiff argues the VE's answers actually support a finding of disability on her part, doc. 16 at 4.

Conversely, Defendant contends substantial evidence supports the ALJ's decision finding Plaintiff not disabled. Specifically, Defendant asserts the ALJ properly weighed the evidence to determine Plaintiff has the residual functional capacity to perform a reduced range of light work, doc. 19 at 6, that Plaintiff's subjective complaints were not fully consistent with medical evidence and, thus, only given weight to the extent the complaints were supported by the evidence, id. at 12, and that Plaintiff fails to adequately rebut the vocational expert's testimony, which constitutes substantial evidence supporting the ALJ's findings, id. at 14.

### A.    Plaintiff's Residual Functional Capacity

#### 1.    *Whether the ALJ Properly Considered Plaintiff's Impairments*

Plaintiff's first enumeration of error concerns the determination of her residual functional capacity. She argues the ALJ left out or did not apply pertinent facts when discrediting each of her impairments. Doc. 16 at 1, 2. The residual functional capacity is an assessment, based upon all the relevant evidence, of a claimant's remaining ability to do work despite her impairments and related symptoms. 20 C.F.R. § 416.945(a). Here, the ALJ found Plaintiff could perform light work of a kind that exists in sufficient number in the economy. Plaintiff argues she, in fact, cannot perform light or even sedentary work, and the ALJ's assessment of her impairments and, thus, her residual functional capacity, is not supported by substantial evidence. Moreover, Plaintiff asserts the ALJ erroneously omitted from her residual functional capacity consideration of the following impairments, which Plaintiff argues are "severe": spinal stenosis, sacroiliac joint damage, chronic pain, lumbar and cervical radiculopathy, disc dehydration, joint dysfunction, PTSD, major depressive disorder, and moderate learning disability. Doc. 16 at 2–3. There is no

serious debate as to the existence of Plaintiff's underlying infirmities—merely as to how the infirmities affect her ability to work.

Plaintiff assigns as reversible error the ALJ's failure to find many of her physical and mental disorders to be severe, id. at 3; Defendant argues in response that substantial evidence supports the ALJ's residual functional capacity finding, doc. 19 at 6. Step two of the five-step, sequential evaluation process asks whether the claimant's impairment is severe. See 20 C.F.R. § 416.920. An impairment or combination of impairments is "severe" if it "significantly limits [Plaintiff's] physical or mental ability to do basic work activities" and persists for at least twelve consecutive months. 20 C.F.R. §§ 416.920(c), 416.905(a). Plaintiff bears the burden to prove that an impairment is severe. See Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001). At step two, "a claimant's impairment is determined to be either severe or not severe. Step two is a threshold inquiry." McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986). It acts as a "filter" to eliminate claims involving no substantial impairment. Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987). In the Eleventh Circuit, "the finding of any severe impairment, whether . . . it qualifies as a disability and whether . . . it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." Id. When an ALJ recognizes at least one severe impairment, the ALJ is not required to identify additional impairments at step two if the decision demonstrates the ALJ properly considered all impairments at subsequent steps. Tuggerson-Brown v. Comm'r of Soc. Sec., 572 F. App'x 949, 951 (11th Cir. 2014). Thus, at the fourth step of the sequential evaluation process, an ALJ must consider all medically determinable impairments, not just the "severe" impairments identified at step two. Id.; 20 C.F.R. § 416.945(a)(2). The ALJ's responsibility is met when she considers all medical evidence in the record by referencing the

claimant's "combination of impairments" at step three and stating that she considered "all symptoms" in assessing the residual functional capacity. Tuggerson-Brown, 572 F. App'x at 951–52. Importantly, the "mere existence" of an impairment does not reveal its effect on a claimant's ability to work or undermine the residual functional capacity findings. Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).

At step two in this case, the ALJ found Plaintiff has the severe impairments of degenerative disc disease and obesity. Doc. 12-2 at 19 (R. 18). The ALJ also found Plaintiff has non-severe impairments, including loss of visual acuity, arthropathy, anxiety disorder, affective disorder, and a learning disorder. Id. at 20 (R. 19). Because the ALJ found Plaintiff has at least one severe impairment, she was not required to identify all of Plaintiff's severe impairments before moving to step three of the sequential evaluation process. See Tuggerson-Brown, 572 F. App'x at 951–52. Therefore, the ALJ did not err at step two. Yet, the Court must still address whether ALJ Pate considered all of Plaintiff's impairments, regardless of severity, in performing the other steps of the sequential evaluation process. As explained below, the Court finds ALJ Pate did so.

### a.    Plaintiff's "Severe" Impairments

During the third step, ALJ Pate noted Plaintiff's degenerative disc disease failed to meet the standard of a listed impairment because the record did not demonstrate "gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affect joint(s)," nor "joint narrowing, bony destruction, or ankylosis of the affected joint(s)." Doc. 12-2 at 22 (R. 21). In further discussion, the ALJ acknowledged Plaintiff's long history of low back pain and that an MRI had revealed a bulging disc and the loss of disc height. Doc. 12-3 at 60 (R. 621). However, as the ALJ notes, the record also shows

Plaintiff's treating physician did not recommend surgical intervention; rather, conservative care, including physical therapy and prescription and over the counter pain medication, was deemed sufficient to treat Plaintiff's degenerative disc disease and accompanying symptoms.  Id. Furthermore, the ALJ noted Plaintiff had received multiple epidural steroid injections, doc. 12-3 at 48 (R. 609) (documenting steroid injections and positive response each time); doc. 12-14 at 5 (R. 640) (showing pre-epidural injection pain score at 8/10 and post-injection pain score at 0/10); and that Gabapentin, a prescription pain medication, had proven effective at controlling Plaintiff's pain, doc. 12-3 at 47 (R. 608).  Based on this record, ALJ Pate decided Plaintiff's degenerative disc disease could continue to be treated conservatively and that she could perform sedentary work.

At the same step, the ALJ noted that obesity, Plaintiff's other severe impairment, had been removed from the Listing of Impairments in the Regulations, but under Policy Interpretation Ruling SSR 02-1p, obesity must be considered in combination with a claimant's other impairments in determining whether the claimant meets or medically equals a listed impairment.[2]  Doc. 12-2 at 22 (R. 21).  The Social Security Administration's Policy Interpretation Ruling addressing the Evaluation of Obesity provides guidance to ALJs on how to identify obesity as a severe impairment.  SSR 02-1p.  This Ruling instructs "obesity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities," and ALJs will "consider the effects of any symptoms (such as pain or fatigue) that could limit functioning."  Id.  Accordingly, the ALJ considered Plaintiff's obesity alongside her other impairments, noting Plaintiff had "not alleged that obesity interferes with her ability to

---

[2]       Specifically, the ALJ cited to 64 Fed. Reg. 46122-01, which deleted Listing 9.09 "obesity" from Appendix 1, Subpart P, Regulations No. 4, effective October 25, 1999.  Doc. 12-2 at 22 (R. 21).

perform work related activities," and that "[t]he record contains no evidence to establish that her obesity has been identified by treatment providers as resulting in any musculoskeletal, cardiovascular, or respiratory limitations." Doc. 12-2 at 26 (R. 25). The ALJ found Plaintiff's obesity and degenerative disc disease, in combination, limit her ability to work but do not entirely prevent her from working. I find the ALJ's decision regarding Plaintiff's severe impairments to be supported by substantial evidence.

### b.     Plaintiff's Other Impairments

As required, the ALJ also considered each of Plaintiff's other impairments. However, Plaintiff's other alleged physical impairments—spinal stenosis, doc. 12-2 at 24 (R. 23); radiculopathy, id.; joint damage, id.; joint dysfunction, id. at 22 (R. 21); and disc dehydration, id. at 25 (R. 24)—are reasonably interpreted as part and parcel of the Plaintiff's degenerative disc disease. The ALJ noted Plaintiff had been diagnosed with these impairments, and that each impairment could reasonably be expected to cause, in some part, Plaintiff's lower back pain. Id. at 24–25 (R. 23–24). However, the ALJ also discerned that, with many of the examinations in the medical record, Plaintiff's condition remained largely unchanged and that each caregiver who treated Plaintiff's chronic back pain prescribed conservative treatment. See Doc. 12-10 at 48–58 (R. 440–50); Doc. 12-11 at 18–22 (R. 472–76); Doc.12-2 at 20–22 (R. 544–46); Doc. 12-13 at 39–43 (R. 600–04); Doc. 12-13 at 60 (R. 621); Doc. 12-14 at 5–7 (R. 640–42).

Additionally, respecting Plaintiff's asserted mental impairments, including PTSD, low IQ, and depression, the ALJ discussed Plaintiff's symptoms and limitations in detail at step three. See Doc. 12-2 at 19–21 (R. 18–20). ALJ Pate assigned great weight to the opinion of psychological consultative examiner Dr. William Corey, whose medical opinion the ALJ found "generally consistent with the longitudinal record." Id. at 20 (R. 19). Specifically, Dr. Corey

opined Plaintiff had unlimited ability to understand and remember simple instructions, unimpaired ability to understand and remember detailed instructions, relatively good concentration and attention, unimpaired capability to interact appropriately, mildly impaired ability to sustain attention for extended periods of time, and unimpaired ability to adapt to workplace stressors based on a lack of history of poor adjustment. Doc. 12-11 at 6–7 (R. 460–61). Furthermore, the ALJ considered the four areas of mental functioning set out for evaluating the severity of mental disorders, known as "paragraph B" criteria. See Doc. 12-2 at 19–21 (R. 18–20); see also 20 C.F.R., Part 404, Subpart P, Appendix 1.

Regarding the first functional area, understanding, remembering, or applying information, the ALJ considered Dr. Corey's opinion, doc. 12-11 at 7 (R. 461), and Plaintiff's own Function Report, wherein Plaintiff stated she requires no reminders to take her medications and is able to follow written and spoken instructions if they are repeated, doc. 12-6 at 44 (R. 226). The second functional area is interacting with others; again, the ALJ considered Dr. Corey's evaluation, which found Plaintiff has no problems getting along with others, doc. 12-11 at 5 (R. 459), and Plaintiff's own Function Report, within which she testified that she spends time with her family weekly, goes places, and has no problems getting along with others, doc. 12-6 at 46–47 (R. 228–29). The third functional area addresses concentrating, persisting, or maintaining pace, and here, Dr. Corey indicated Plaintiff's concentration and attention were grossly intact as measured by counting backwards, spelling, and word recall. Doc. 12-11 at 5 (R. 459). Additionally, the ALJ considered Plaintiff's Function Report, in which she claimed she could maintain attention for about 15 minutes due to Attention Deficit Disorder ("ADD"). Doc. 12-6 at 47 (R. 229). The fourth and final functional area concerns adapting or managing oneself. In this area, the ALJ considered both Plaintiff's and her mother's testimony that Plaintiff has no

problems with personal care, other than needing help getting out of the bathtub, and that she is able to cook simple meals, perform light cleaning, drive to the store, and shop for groceries. Doc. 12-6 at 28–31, 43–45 (R. 210–13, 225–27). The ALJ also considered Dr. Corey's opinion which noted Plaintiff could maintain her hygiene and grooming on her own, complete light housework, shop for groceries, drive, and manage money. Doc. 12-11 at 5 (R. 459).

In evaluating whether Plaintiff's anxiety disorder, affective disorder, and learning disorder met the "paragraph B" criteria for evaluating mental disorders, the ALJ found Plaintiff had no limitation in the ability to understand, remember, and apply information, no limitation in the ability to interact with others, no limitation in the ability to adapt or manage herself, and no more than a mild limitation in the ability to concentrate, persist, or maintain pace. Doc. 12-2 at 20–21 (R. 19–20). Thus, the ALJ found Plaintiff's mental conditions non-severe and did not factor those mental conditions into Plaintiff's residual functional capacity. Id. at 21 (R. 20).

The ALJ specifically states she considered "all" of Plaintiff's symptoms and the "entire record" to determine Plaintiff's severe impairments. Id. at 19, 22 (R. 18, 21). Based on the foregoing, ALJ Pate thoroughly and properly considered each of Plaintiff's alleged impairments in formulating her residual functional capacity. The Court finds substantial evidence supports the ALJ's conclusions as to those impairments.

    2.    *Plaintiff's Physical Limitations in Her Residual Functional Capacity*

Plaintiff also argues the ALJ failed to develop the record as to her physical capabilities, doc. 16 at 1, namely, those outlined in the ALJ's residual functional capacity, i.e., inability to more than occasionally stoop or climb ladders, ropes, or scaffolds, and inability to more than frequently climb ramps and stairs, balance, kneel, crawl, or crouch, doc. 12-2 at 22 (R. 21). Although the ALJ generally has an obligation to develop the record, the ALJ did not err by

failing to require Plaintiff to undergo a physical function test.  "The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision.  Ingram, 496 F.3d at 1269 (citing to Doughty v. Apfel, 245 F.3d 1274, 1281 (11th Cir. 2001)).  As previously discussed, the record contains ample evidence that Plaintiff's degenerative disc disease had stabilized and her associated back pain had been regularly alleviated by physical therapy, prescription and over the counter pain medications, and infrequent epidural steroid injections.  Furthermore, despite having the opportunity, Plaintiff's counsel raised no objection to the hypothetical question posed by the ALJ to the VE, which included the above-stated physical limitations.  Doc. 12-2 at 58–61 (R. 57–60).  Plaintiff had an obligation to raise any issue concerning her inability to stoop, climb, balance, kneel, crawl, or crouch at her hearing.  The ALJ had enough information to resolve Plaintiff's application and, accordingly, the ALJ committed no error formulating Plaintiff's residual functional capacity.

### 3. *Plaintiff's Medical Record*

Finally, Plaintiff asserts the ALJ considered another patient's record during her hearing. However, the transcript of Plaintiff's hearing shows the opposite—indeed, Plaintiff's own counsel indicated to the ALJ that a single page from another person's file had been mistakenly included in one of Plaintiff's exhibits, and the ALJ instructed that the page be removed from the record.  Id. at 36–37 (R. 35–36).  Moreover, the ALJ does not refer to documents from another patient in her decision, so Plaintiff's argument is moot.  Thus, here, too, the ALJ committed no error.

### B.      Plaintiff's Subjective Complaints

Plaintiff argues the ALJ erred by not according enough weight to her subjective symptoms, notably her chronic pain, which she alleges prevents her from being able to work a full shift of a sedentary job.  However, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability."  42 U.S.C. § 423(d)(5)(A).  Rather, "there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence . . . would lead to a conclusion that the individual is under a disability."  Id.  In evaluating the intensity and persistence of a claimant's symptoms and determining the extent to which they limit work capacity, an ALJ considers "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence."  20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  Pertinent evidence includes evidence of daily activities; the location, duration, frequency, and intensity of pain and other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; treatment other than medication for relief of pain or other symptoms; and measures taken to relieve pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  If an ALJ fails to credit a claimant's testimony about her symptoms, the ALJ "must articulate explicit and adequate reasons for doing so."  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  This process is called a subjective symptom evaluation and is meant to assess whether a claimant's self-described limitations are consistent with and supported by the record.  SSR 16-3p.  The subjective symptom evaluation is wholly

"the province of the ALJ." Mitchell v. Comm'r of Soc. Sec., 771 F.3d 780, 782 (11th Cir. 2014) (citing to Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005)). Reviewing courts "will not disturb a clearly articulated [subjective symptom evaluation] supported by substantial evidence." Id. (citing to Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995)).

Here, ALJ Pate made a clearly articulated finding that Plaintiff's medically determinable impairments could produce her alleged symptoms, namely chronic back pain. Doc. 12-2 at 25 (R. 24). Nevertheless, the ALJ found the evidentiary record contradicted some of Plaintiff's allegations concerning the intensity, persistence, and limiting effects of these symptoms. Id. "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," as long as the decision is not so broad as to prevent a reviewing court from concluding that the ALJ "considered [the claimant's] medical condition as a whole." Mitchell, 771 F.3d at 782.

As the Court has already discussed, substantial evidence supports the ALJ's findings that Plaintiff's pain could be treated with physical therapy and prescription and over-the-counter pain medication. Furthermore, the ALJ took into consideration Plaintiff's activities of daily living, noting Plaintiff's ability to maintain hygiene and grooming, complete light housework such as sweeping, laundry, and folding clothes, go shopping for groceries, drive herself, and prepare meals. Doc. 12-11 at 5 (R. 459); Doc. 12-6 at 42–49 (R. 224–31). Nonetheless, "out of the abundance of caution," ALJ Pate took Plaintiff's subjective symptoms into consideration while determining her residual functional capacity, limiting Plaintiff to "sedentary work activity with additional postural restrictions to accommodate her." Doc. 12-2 at 25 (R. 24). Thus, the ALJ's subjective symptom evaluation was not a broad rejection of Plaintiff's alleged symptoms and was otherwise supported by substantial evidence.

**C.      The Vocational Expert's Testimony**

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002).  Plaintiff argues the hypothetical question the administrative law judge posed to the vocational expert was improper because the question assumed Plaintiff could stand, walk, and sit during a six-hour workday and left out Plaintiff's alleged mental impairments.  Doc. 12-2 at 55 (R. 54).  Plaintiff also claims the VE's assertion that an individual with Plaintiff's residual functional capacity, who was absent from work three or more times in one month, without excuse, would more than likely be terminated, supports finding in her favor because she would be unable to avoid absences from work because her pain requires her to lie down at intervals and to attend doctor's appointments.  Doc. 16 at 4.

The ALJ is not required to formulate a hypothetical that includes findings she rejected as unsupported.  See Glover v. Colvin, 705 F. App'x 815, 818 (11th Cir. 2017).  As already discussed, the ALJ's hypothetical question incorporated those impairments that were supported by the record—Plaintiff's mental conditions did not have to be included in the hypothetical.  Moreover, substantial evidence supports ALJ Pate's finding that conservative treatment is sufficient to mitigate Plaintiff's pain and enable her to work.  Accordingly, substantial evidence supports the ALJ's finding that Plaintiff could sit or stand for six hours out of an eight-hour day, and the ALJ did not err by omitting additional physical or mental impairments from the hypothetical question posed to the VE.

**V.      Whether Plaintiff's New Evidence Requires Remand, Affirmance, Reversal, or Modification of the Social Security Administration Commissioner's Decision**

Plaintiff additionally alleges error by the Appeals Council for failing to consider new evidence, including a spinal surgery recommendation which she contends shows the

17

deterioration of her spinal condition.  Doc. 16 at 4; Doc. 20 at 1, 4.  To summarize the issue,

when Plaintiff requested the Appeals Council review the ALJ's decision she only attached a

typed list of her contentions of fact; she included no new, objective, or material evidence.  Doc.

12-7 (R. 263).  Plaintiff requested more time to file her new evidence, and the Appeals Council

granted her 25 extra days.  Doc. 12-2 at 8 (R. 7).  Plaintiff failed to file additional evidence in

time, and the Appeals Council denied her Request for Review.  Id. at 2 (R. 1).  Thereafter,

Plaintiff filed her Brief, doc. 16, and Reply Brief, doc. 20, both of which contained attached

evidence previously unseen by the ALJ and Appeals Council.

     Typically, a claimant may present new evidence at every stage of the administrative

process.  Ingram, 496 F.3d at 1261.  Although the Appeals Council may decline to review the

ALJ's denial of benefits, it "must consider new, material, and chronologically relevant evidence"

submitted by the claimant.  Washington v. Soc. Sec. Admin., Comm'r, 806 F.3d 1317, 1320

(11th Cir. 2015) (quotations omitted); 20 C.F.R. § 404.970(b) (2016).  The claimant may seek

review in a federal court of "any final decision of the Commissioner of Social Security," only

after exhausting these administrative remedies.  42 U.S.C. § 405(g); see Sims v. Apfel, 530 U.S.

103, 107 (2000) (claimant must appeal to Appeals Council to exhaust remedies).

     Section 405(g) permits a district court to remand an application for benefits to the

Commissioner, who was denominated "the Secretary" in the original statute, by two methods,

which are commonly denominated "sentence four remands" and "sentence six remands," each of

which remedies a separate problem.  Sentence four of § 405(g) provides the federal court "power

to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or

reversing the decision of the Commissioner of Social Security, with or without remanding the

cause for a rehearing."  Sentence six of § 405(g) provides a federal court the power to remand

the application for benefits to the Commissioner for the taking of additional evidence upon a showing "that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."

Plaintiff argues the Appeals Council erred when it denied review of her application because the Council did not consider her new evidence. Doc. 16 at 4–5. She specifically requests the Court not remand her case but "make a decision based on the facts in the record." Id. at 5. Accordingly, Plaintiff requests, though not in as many words, modification of the Commissioner's decision under sentence four. However, because Plaintiff's new evidence is being considered for the first time at the district court level, she must proceed under sentence six.

Plaintiff challenges the ALJ's finding that she had never been recommended for surgery, stating a spine specialist "has recommended [Plaintiff] for surgery," but Plaintiff did not timely introduce the new evidence supporting her contention. Doc. 12-7 at 5 (R. 265). The record shows Plaintiff requested review of the ALJ's decision on April 15, 2018 and attached nine pages to her request. Doc. 12-4 at 75 (R. 172). The nine attached pages contain Plaintiff's factual disputes with the ALJ's decision and an annotated partial copy of the ALJ's decision replete with Plaintiff's handwritten corrections. Doc. 12-7 at 7–9 (R. 267–69). Her contentions of fact assert, in pertinent part,

> [T]he ALJ again makes a determination without giving the prominent weight to the medical evidence. Paragraph 5, states that [Plaintiff] was never recommended for surgery. This is factually incorrect. Her physicians and pain management physician was trying to buy her time due to her age. She was informed of the need for surgery by Dr. Paul Lane at Valdosta orthopedics. She was told for the surgery to be successful she needed to lose weight. The ALJ judge assumed that [Plaintiff] had not tried to lose weight which is not true. She had made an appointment at the weight loss clinic in December 2017 but an appointment was not available until January 23, 2018 which [Plaintiff] went to and has continued. Even after 30 lbs. weight loss, Dr. Hurtsford[sic] of St. Vincent's Florida, (a spine specialist) has recommended [Plaintiff] for surgery. The reason [Plaintiff] hasn't had surgery is because she has not the funds for the surgery.

Doc. 12-7 at 5 (R. 265). Yet, Plaintiff did not attach to her Request for Review Dr. Hurford's medical notes recommending surgery or any other objective medical evidence. Instead, she asked for "additional time to retrieve documents from surgeon." Doc. 12-4 at 75 (R. 172). The Appeals Council granted Plaintiff's request for more time, giving her an additional 25 days to provide more evidence. Doc. 12-2 at 8 (R. 7). However, by the amended deadline, June 22, 2018, it seems Plaintiff had not submitted any additional medical records. The only evidence the Appeals Council says it considered were Plaintiff's Request for Review, doc. 12-4 at 75 (R. 172), and contentions of fact, doc. 12-7 at 3–12 (R. 263–72). And from the allegations asserted in the provided filings, the Appeals Council "found that the reasons do not provide a basis for changing the Administrative Law Judge's decision." Doc. 12-2 at 2 (R. 1).

Plaintiff, however, states she "requested review with appeals council and submitted new evidence which was a second opinion (please see exhibit A 4 pages) at Dr. Hursford at Southeast Orthopedics in Jacksonville Florida. Appeals council denied her request for review." Doc. 20 at 1. But Plaintiff provides no evidence she actually submitted the Dr. Hurford record to the Appeals Council. She only points to the records themselves, which she attached to her reply brief. Doc. 20-1 (marked "Exhibit A (4 pages)" at the top). Furthermore, the record contains no other evidence filed by Plaintiff between the time she filed her Request for Review and when the Appeals Council issued its decision. Therefore, the Court must conclude Plaintiff failed to timely submit her new evidence to the Appeals Council. Accordingly, Plaintiff cannot challenge the Appeals Council's decision under sentence four because the agency committed no error. [3] She must proceed under sentence six.

---

[3]      Even if Plaintiff timely submitted her new evidence to the Appeal Council, I find no indication either piece of evidence is chronologically relevant. For evidence to be chronologically relevant, it must

"The sixth sentence of § 405(g) plainly describes an entirely different kind of remand [from the fourth sentence], appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." Ingram, 496 F.3d at 1267 (citing Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990)). A remand to the Commissioner is proper under sentence six when new material evidence that was not incorporated into the administrative record for good cause comes to the attention of the district court. See Milano v. Bowen, 809 F.2d 763, 766–67 (11th Cir.1987).

To be entitled to a sentence six remand, "the claimant must show that (1) new, non-cumulative evidence exists, (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result, and (3) good cause exists for claimant's failure to submit the evidence at the appropriate administrative level." Gordon v. Soc. Sec. Admin., Comm'r, 625 F. App'x 512, 514 (11th Cir. 2015) (citing Caulder v. Bowen, 791

relate to the period on or before the date of the ALJ's decision. Lindsey v. Comm'r of Soc. Sec., 741 F. App'x 705, 710 (11th Cir. 2018). Both Plaintiff's pieces of evidence relate to assessments made well after the ALJ entered her decision on February 22, 2018. In other words, because neither piece of evidence suggests that before the ALJ's decision Plaintiff needed surgery or her symptoms were worse than the other medical evidence proposes, neither piece of evidence is chronologically relevant. See Sorter v. Soc. Sec. Admin., 773 F. App'x 1070, 1072 (11th Cir. 2019) (finding treating physician's letter not chronologically relevant because letter did not relate to the period on or before the date of the ALJ's decision). The Eleventh Circuit has found that a physician's opinion based on an examination conducted several months after the ALJ's decision can be chronologically relevant, but only in certain circumstances. Washington v. Soc. Sec. Admin., 806 F.3d 1317, 1319, 1322 (11th Cir. 2015). Examples of such circumstances are where the doctor's later opinion is based, at least in part, on the claimant's reports about symptoms throughout his life and medical records predating the ALJ decision, id. at 1319, 1322, or where the doctor does not indicate he reviewed or relied on a plaintiff's prior medical records in forming his medical opinion, other than stating the duration of the plaintiff's condition, his own medical record is not considered chronologically relevant. Lindsey, 741 F. App'x at 712. In the instant case, nothing in Dr. Hurford's notes indicates he considered Plaintiff's past medical records or that the information in them relates to the disability period at issue. Indeed, Dr. Hurford's notes merely state, "Patient reports l lumbar pain since September 19, 2011." Doc. 20-1 at 1. Accordingly, neither piece of new evidence is chronologically relevant. Therefore, although I find Plaintiff did not timely submit her new evidence to the Appeals Council, even if she had timely submitted the evidence, the Appeals Council had no obligation to consider it.

F.2d 872, 877 (11th Cir. 1986)).  Plaintiff's new evidence includes: a medical record from a March 15, 2018 appointment at Southeast Orthopedic Specialists, wherein Dr. Robert Hurford "suggested [Plaintiff] may benefit from consideration of [spinal fusion surgery]" due to Plaintiff's ongoing symptoms and lack of response to conservative treatment, doc. 16-13; doc. 20-1 at 1–4; and a July 29, 2019 e-mail from Dr. Paul Lane stating Plaintiff "is in need of a spinal [fusion] surgery to help correct/alleviate" Plaintiff's lower back pain, doc. 20-1 at 6.

Plaintiff argues this evidence shows her spine has deteriorated during her unemployment, citing the first piece of new evidence, which includes a March 15, 2018 x-ray from Dr. Hurford and notes "grade 2 spondylolisthesis," doc. 16-13 at 3, as compared to an x-ray from May 2, 2017, which was in the existing record and shows "grade 1 spondylolisthesis" at the same joint in her spine.  Doc. 12-11 at 58 (R. 512).  The evidence is inconsistent with the ALJ's finding that Plaintiff's back condition has not changed over a long period and that Plaintiff has never been recommended for spinal surgery.  Doc. 12-2 at 25 (R. 24).  Accordingly, I find the two medical reports new and non-cumulative.

Regarding the evidence's materiality, I find the medical record from Dr. Hurford is material, but the e-mail from Dr. Lane is immaterial.  Substantial evidence supports the ALJ's decision, and the underlying reasoning is heavily based on multiple doctors' recommendations that Plaintiff should continue to treat her lower back pain with conservative care, meaning physical therapy and pain medication.  Plaintiff's new evidence undermines this conclusion, but the probative value of each piece of evidence is different.

Dr. Hurford's notes show Plaintiff's symptoms have worsened and conservative care is less effective, reporting "noticeable symptoms of weakness in her right leg," that "prolonged sitting and standing exacerbates her pain," that Gabapentin is "decreasing in effect," and that

epidural injections only "help for about six weeks." Doc. 16-13 at 1. Ultimately, Dr. Hurford

opines that, "[g]iven the ongoing symptoms, lack of response to conservative treatment, and

associated radiographic findings," Plaintiff "may benefit from consideration of [spinal fusion

surgery]." Id. at 4. Dr. Hurford's records indicate Plaintiff is experiencing severe pain and

appears to show medication is no longer helping her worsening condition; therefore, "a

reasonable possibility exists that the new evidence would change the administrative result."

Gordon, 625 F. App'x at 514; see also Vega v. Comm'r of Soc. Sec., 265 F.3d 1214, 1219 (11th

Cir. 2001) (finding claimant's new evidence material "because it contradicts the ALJ's findings

and conclusions regarding the severity of [claimant's] spinal problems").

However, the e-mail from Dr. Lane provides significantly less support to Plaintiff's case.

In his e-mail, Dr. Lane merely states Plaintiff "is in need of spinal surgery to help correct" her

low back pain. Doc. 20-1 at 6. The e-mail contains no professional diagnosis or radiographic

findings and no opinion on Plaintiff's ability to work; by itself, the e-mail is insufficient to rebut

the vast weight of the other medical opinions the ALJ considered in her decision. Therefore, I

find there is no "reasonable possibility" the e-mail from Dr. Lane would "change the

administrative result" and do not address the e-mail further. Gordon, 625 F. App'x at 514.

Assuming the medical record from Plaintiff's March 15, 2018 appointment with Dr.

Hurford is material, Plaintiff must demonstrate "good cause" for her failure to produce at the

administrative level. Good cause for failing to present evidence earlier may exist where the

evidence did not exist at the time of the administrative proceeding. Cherry v. Heckler, 760 F.2d

1186, 1192 (11th Cir. 1985). Plaintiff's hearing before ALJ Pate occurred January 31, 2018,

doc. 12-2 at 35 (R. 34), and the ALJ published her decision on February 22, 2018, id. at 28 (R.

27). Plaintiff saw Dr. Hurford on March 15, 2018. Doc. 16-13. Plaintiff requested review of the

ALJ's decision on April 15, 2018, a month later. Doc. 12-4 at 75 (R. 172). Along with her request for review, Plaintiff asked for "additional time to get medical records and additional information from surgeon." Doc. 12-7 at 12 (R. 272). On May 8, 2018, the Appeals Council granted Plaintiff 25 more days to send more information. Doc. 12-2 at 8 (R. 7). As the Court has already concluded, Plaintiff did not submit the record from the appointment with Dr. Hurford to the Appeals Council at any point, as it does not appear on the administrative record and is not listed under the exhibits the Appeals Council considered in its review. See Doc. 12-1 at 1–3 (Court Transcript Index); Doc. 12-2 at 5 (R. 4). Based on this timeline, the medical record from Dr. Hurford was created after Plaintiff's ALJ hearing and after the ALJ issued her decision but before Plaintiff requested review by the Appeals Council and well before the deadline for Plaintiff to submit additional medical records to the Appeals Council. Because Plaintiff offers no explanation for failing to submit Dr. Hurford's report to the Appeals Council within the required time period (or at all), I find she has failed to establish good cause for failing to submit new evidence at the appropriate administrative level. See Dow v. Sec'y of Health & Human Servs., No. Civ. 93-76-B, 1994 WL 258562, at *6 (D.N.H. Mar. 31, 1994). Accordingly, I find the Commissioner's decision does not require remand under sentence six.

CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **AFFIRM** the decision of the Commissioner. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address

any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. <u>See</u> 28 U.S.C. § 636(b)(1)(C); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 3rd day of March, 2020.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA